UNITED STATES DISTRICT COURT
WESTERN DISCTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CRIMINAL ACTION NO. 1:07-CR-23-TBR

UNITED STATES OF AMERICA                                                                PLAINTIFF

v.

WILLIAM ROY HENDRICK                                                                    DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendant William Roy Hendrick's *pro se* Motion for Compassionate Release in Light of COVID-19, [DN 62], and Motion for Compassionate Release, [DN 64]. Previously, Defendant Hendrick filed a Motion for Compassionate Release in Light of COVID-19, [DN 62]. The Court denied Defendant's original motion without prejudice. [DN 63]. When Defendant filed the instant motion for compassionate release, [DN 64], the Court vacated its prior order denying DN 62 and directed the United States to respond to DN 62 and DN 64. [DN 65]. The United States has responded, [DN 67]. This matter is ripe for adjudication. For the reasons stated herein, Defendant's Motion for Compassionate Release in Light of COVID-19, [DN 62], and Motion for Compassionate Release, [DN 64], are **DENIED**.

**BACKGROUND**

On April 6, 2007, Hendrick and his co-defendant Richard Parrott robbed an FDIC bank in Bowling Green, Kentucky while wearing masks and carrying a sawed-off shotgun. The two men

escaped with over $12,000.00. [DN 43; DN 67 at 219]. On April 25, 2007, Hendrick and Parrott attempted to rob the same bank, but were locked out of the lobby in the foyer. One of the men fired the shotgun at the exterior door, and Hendrick and Parrott fled. [DN 43]. Subsequently, both men were charged with one count of bank robbery, one count of attempted bank robbery, and two counts of brandishing a firearm during a crime of violence. [*Id*; DN 47 at 124]. Hendrick pleaded guilty on October 24, 2007, and in return, the United States dismissed one of the brandishing counts and agreed to a 25-year sentence. [DN 43; DN 67 at 220]. On February 5, 2008, the Court sentenced Hendrick to a total term of 300 months (25 years) imprisonment and three years supervised release. [DN 42]. Currently, Henderson has served approximately 13.5 years (54 percent) of his sentence. Hendrick now seeks compassionate release pursuant to the First Step Act.

## LEGAL STANDARD

"The court may not modify a term of imprisonment once it has been imposed except that-

(1) in any case—

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction"

18 U.S.C.A. § 3582(c)(1)(A). "The First Step Act modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3852, such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences." *United States of America v. D-1 Duwane Hayes*, No. 16-20491, 2020 WL 7767946, at *1 (E.D. Mich. Dec. 30,

2020) (citing *United States v. Jones*, 980 F.3d 1098, 1100 (6th Cir. 2020)). "Now, an imprisoned person may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release request—whichever is earlier." *Jones*, 980 F.3d at 1105 (citing First Step Act of 2018, Pub. L. 115-391, Title VI, § 603(b), 132 Stat. 5194, 5239; 18 U.S.C. § 3582(c)(1)(A) (2020)).

In considering a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A), a district court shall engage in a "three-step inquiry." *United States v. Elias*, No. 20-3654, 2021 WL 50169, at *1 (6th Cir. Jan. 6, 2021) (citing *Jones*, 980 F.3d at 1101). First, "the court must 'find' that 'extraordinary and compelling reasons warrant a sentence reduction.'" *Id.* (citing *Jones*, 980 F.3d at 1101). Second, the court must "ensure 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *Id.* (citing *Jones*, 980 F.3d at 1101). Although the Sentencing Commission's policy statement on reductions in terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A) is recited at U.S.S.G. § 1B1.13, "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018 . . . [and] the policy statement does not wholly survive the First Step Act's promulgation." *Jones*, 980 F.3d at 1109 (citing U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018)).

Consequently, the Sixth Circuit in *Jones* decided that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, U.S. Sentencing Guideline § 1B1.13 is no longer an "applicable" policy statement in cases where an incarcerated person, as opposed to the Director of the Bureau of Prisons, files his or her own compassionate release motion in district court. *Jones*, 980 F.3d at 1109. Accordingly, district courts "may skip step two of the § 3582(c)(1)(A) inquiry" and have "full discretion . . . to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id.* at

1109, 1111. Thus, for now, district courts need not ensure that their ideas of extraordinary and compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) are consistent with the Sentencing Commission's idea of extraordinary and compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) as currently reflected at U.S.S.G. § 1B1.13.

Despite the Sixth Circuit's holding in *Jones*, this Court agrees with the United States District Court for the Eastern District of Kentucky in stating that "[w]hile the policy statement found in U.S.S.G. § 1B.13 of the Sentencing Guidelines is not binding, it provides a useful starting point to determine whether extraordinary and compelling reasons exist." *United States v. Muncy*, No. 6: 07-090-DCR, 2020 WL 7774903, at *1 (E.D. Ky. Dec. 30, 2020). Congress provided no statutory definition of "extraordinary and compelling reasons" in section 3582(c)(1)(A). *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). Instead, Congress directed the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *United States v. Adkins*, No. 5:18-058-DCR, 2020 WL 7755629, at *1 (E.D. Ky. Dec. 29, 2020) (quoting 28 U.S.C. § 994(t)). Those descriptions are found in § 1B1.13 of the United States Sentencing Guidelines (policy statement) and the application notes to that section.

This policy statement describes four categories of extraordinary and compelling reasons. The first three relate to an inmate's serious medical conditions, age, and status as a caregiver. U.S.S.G. § 1B1.13, cmt. n.1(A)–(C). Specific medical conditions of a defendant constituting extraordinary and compelling reasons for a reduction in terms of imprisonment may include "terminal illness," "a serious physical or medical condition," "a serious functional or cognitive impairment," or "deteriorating physical or mental health because of the aging process." *Id.* The application note to U.S.S.G. § 1B1.13 further provides that the age of a defendant may be a

necessary and compelling reason for a reduction in terms of imprisonment when "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.* The last category is a catch-all provision titled "Other Reasons," which reads: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13, cmt. n.1(D).

After considering whether extraordinary and compelling reasons warrant a sentence reduction and whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission, the district court proceeds to the third and final step of the analysis. If a sentence reduction is warranted under steps one and two, at step three, the court is to consider whether that reduction is defensible under the circumstances of the case by considering all relevant sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A)); *Elias*, 2021 WL 50169, at *1 (citing *Jones*, 980 F.3d at 1101); *Jones*, 980 F.3d at 1108.

## DISCUSSION

### I. Exhaustion of Administrative Remedies

"Federal law has long authorized courts to reduce the sentences of federal prisoners facing extraordinary health conditions and other serious hardships, but only under very limited circumstances." *United States v. Beck*, --- F.Supp.3d. ----, No. 1:13-CR-186-6, 2019 WL 2716505, at *4 (M.D.N.C. June 28, 2019). Under the First Step Act, courts are now permitted to "consider motions by defendants for compassionate release without a motion" by the BOP Director "so long as the defendant has asked the Director to bring such a motion and the Director fails to or refuses."

*United States v. Marshall*, No. 3:19-CR-00004-JHM, 2020 WL 114437, at *1 (W.D. Ky. Jan. 9, 2020).

Henderson filed a request for Compassionate Release with the Bureau of Prisons pursuant to 18 U.S.C § 3582(c)(1)(A), arguing that his age and medical conditions put him at a higher risk for serious complications from COVID-19. [DN 64 at 158]. On November 19, 2020, the Warden responded and denied Hendrick's request. [*Id.*] The Warden explained that Hendrick's medical conditions are considered chronic but stable and not life-threatening or terminal, he has not had signs or symptoms of COVID-19, and he remains independent in all aspects and is able to navigate the correctional environment. [*Id.* at 159]. The Government did not object to the exhaustion requirement. [DN 67]. Thus, the Court finds that Hendrick has properly exhausted his administrative remedies under the First Step Act.

**II. Extraordinary and Compelling Reasons**

Where, as here, an incarcerated person files a motion for compassionate release directly, the district judge may skip step two of the § 3582(c)(1)(A) inquiry and has full discretion to define and determine whether an "extraordinary and compelling" reasons exists on his own initiative, without consulting the policy statement § 1B1.13. *Elias*, No. 20-3654, 2021 WL 50169, at *1 (citing *Jones*, 980 F.3d at 1111). The Sixth Circuit recently approved the following two-part test "for deciding when the concern of contracting COVID-19 becomes an extraordinary and compelling reason for compassionate release: (1) when the defendant is at a high risk of having complications from COVID-19 and (2) the prison where the defendant is held has a severe COVID-19 outbreak." *Elias*, 984 F.3d at 520 (quoting *United States v. Hardin*, No. 19-CR-240, 2020 WL 2610736, at *4 (N.D. Ohio May 22, 2020) (internal quotation marks omitted)).

In support of his motion, Defendant argues that his age (71), the fact that he has served over 50 percent of his sentence (54 percent), and his chronic medical conditions including hypertension, cataracts, osteoarthrosis, and a history of Type II diabetes mellitus—which is currently in remission—constitute extraordinary and compelling reasons for his release. [DN 64; DN 69 at 233]. Defendant also emphasizes the educational programs he has completed, his positive disciplinary record, and states that he is not a threat to public safety. [DN 69 at 233]. In response, the Government argues that Defendant's motion should be denied "because Hendrick has received the COVID-19 vaccine, and all of the sentencing factors in 18 U.S.C. § 3553 weigh heavily against his release." [DN 67 at 219].

Defendant's BOP medical records confirm that he is a 71-year-old white male who suffers from a history of Type II diabetes, hypertension, and osteoarthrosis. [*See generally* DN 66-1]. These records reflect that his hypertension is being managed with medication, and that his diabetes is in remission and controlled by medication. [*Id.* at 175]. The Court recognizes that pursuant to guidelines from the Centers for Disease Control, Defendant's age and medical conditions place him at a higher risk of severe complications from COVID-19.[1] However, the increased risk to Defendant's health from COVID-19 was mitigated when he received the Pfizer vaccine. On January 12, 2021, the BOP administered the first does of the Pfizer COVID-19 vaccine to Defendant. [*Id.* at 215]. Two doses of the Pfizer vaccine are required for an individual to be fully vaccinated, and the second dose is administered at least three weeks (21 days) after the first dose.[2]

---

[1] The CDC has stated that those with diabetes are at an increased risk of severe illness from COVID-19, and those with high blood pressure may be at an increased risk. Moreover, statistically speaking, Defendant's age (71) puts him at a higher risk of serious illness from COVID-19 than other age groups even though his age does not place him in the most vulnerable category. The CDC website states that individuals aged 65–74 are 5x more likely to be hospitalized and 90x more likely to die from COVID-19 compared to an 18–29-year-old. *See Centers for Disease Control and Prevention, Rate Ratios Compared to 18-29 Year Olds*, CDC, https://perma.cc/URL5-CLCP (last visited Apr. 7, 2021).

[2] https://www.cdc.gov/vaccines/covid-19/info-by-product/pfizer/index.html (last visited Apr. 7, 2021).

Accordingly, Defendant should have received the second does of the Pfizer vaccine on or about February 2, 2021.[3] However, a CDC study shows that a single dose (partial immunization) of Pfizer or Moderna's COVID-19 vaccine is 80% effective in preventing coronavirus infections 14 days after the first dose is administered.[4]

People are considered fully vaccinated two weeks after receiving the second dose in a two-dose series.[5] As of April 6, 2021, over 63 million people in the United States have been fully vaccinated.[6] The BOP reports that at USP Atlanta, where Defendant is housed, 216 inmates and 150 staff members have been fully inoculated.[7] The Court is not aware of any official scientifically derived evidence showing that severe complications or death from COVID-19 is likely after an individual has received a full vaccination regimen. Based on clinical trials, the Pfizer vaccine is up to 95% effective at preventing laboratory-confirmed COVID-19 illness in people without evidence of previous infection.[8] Moreover, even if Defendant were to contract COVID-19 after being vaccinated, individuals who receive the Pfizer vaccine are less likely to have serious complications from the virus.[9] The risk of COVID-19 to Defendant's health does not constitute an extraordinary and compelling reason warranting relief under 18 U.S.C § 3582(c)(1)(A).

The Court notes that there is no indication that Defendant has not been able to receive care or that his medical conditions are not being managed. Defendant's medical records show that the BOP has made significant efforts to provide meaningful care for Defendant, including

---

[3] The Court has not received updated BOP medical records beyond January 12, 2021.
[4] https://www.cdc.gov/mmwr/volumes/70/wr/mm7013e3.htm (last updated Apr. 2, 2021).
[5] https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html (last visited Apr. 7, 2021).
[6] https://covid.cdc.gov/covid-data-tracker/#vaccination-trends (last updated Apr. 6, 2021).
[7] https://www.bop.gov/coronavirus/ (accessed by the Court on Apr. 7, 2021).
[8] https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html (last updated Apr. 2, 2021).
[9] https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html#ref14 (last updated Apr. 2, 2021).

administering the Pfizer COVID-19 vaccine, and USP Atlanta is equipped to meet his medical needs. [*See generally* DN 66-1]. Accordingly, the Court finds that Defendant's age, health conditions, and the risk posed by COVID-19 do not constitute extraordinary and compelling reasons warranting compassionate release. Even if Defendant presented extraordinary and compelling reasons for his release, the Court finds that compassionate release is not appropriate under 18 U.S.C. § 3553(a).

### III. 18 U.S.C. § 3553(a) Factors

Considering the totality of Defendant's circumstances, Defendant's compassionate release under 18 U.S.C. § 3582(c)(1)(A) is not warranted. Nonetheless, even though the Court has found Defendant is not entitled to compassionate release, the Court will weigh the sentencing factors in § 3553(a). *United States v. Willis*, 382 F.Supp.3d 1185, 1188 (D.N.M. 2019). Pursuant to § 3553(a), a court imposing a sentence shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;

> (4) the kinds of sentence and the sentencing range established for [the applicable offense category as set forth in the guidelines];
>
> (5) any pertinent policy statement . . . by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), the Court finds that compassionate release is not appropriate. Here, the "nature and circumstances" of Defendant's crimes and the "history and characteristics of the defendant" weigh heavily against relief. Defendant has currently served approximately 13.5 years of his 25-year sentence for armed bank robbery. The Government highlights the fact that Defendant has already received a significant sentence reduction and "his 25-year sentence represents less than half of the sentence he would have faced had he been convicted of all counts at trial."[10] [DN 67 at 220 n.1].

Notably, Defendant has a long history of violent criminal conduct. Prior to committing the instant crimes, Defendant had approximately 13 significant adult convictions for offenses including assault, burglary, robbery (including bank robbery), and carrying a concealed firearm. [DN 143; DN 67 at 220]. In one instance, Defendant attempted to carjack a 65-year-old woman and struck her with a handgun. [DN 143]. In another, he used a gun to rob a bank with Parrott, and threatened customers and tellers in the bank, then stole a car. [*Id.*] Defendant also has a history of failing to appear and violating the terms of his probation and parole. [*Id.*]

---

[10] Defendant was charged with one count of bank robbery, one count of attempted bank robbery, and two counts of brandishing a firearm during a crime of violence. Defendant faced a mandatory minimum 35-year sentence for the two brandishing counts, plus an additional 15 years and 8 months for the two robberies. [DN 143]. Defendant pleaded guilty, and in return, the United States dismissed one of the brandishing counts and agreed to a 25-year sentence. [*Id.*]

Accordingly, the Court finds that the nature and circumstances of the present offense and Defendant's pre-confinement history and characteristics do not support relief. Reducing his sentence would minimize the nature and seriousness of his crimes and fail to afford adequate deterrence to criminal conduct. Moreover, after considering the totality of Defendant's circumstances, his offense conduct, and lengthy criminal history, the Court cannot conclude that Defendant would not pose "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Therefore, the Court does not find compassionate release appropriate. Defendant's Motion for Compassionate Release in Light of COVID-19, [DN 62], and Motion for Compassionate Release, [DN 64], must be DENIED.

## CONCLUSION

For the above stated reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Compassionate Release in Light of COVID-19, [DN 62], and Defendant's Motion for Compassionate Release, [DN 64], are **DENIED**.

**IT IS SO ORDERED.**

Thomas B. Russell, Senior Judge
United States District Court

April 13, 2021

CC: **William Roy Hendrick**
18367-075
ATLANTA
U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 150160
ATLANTA, GA 30315
PRO SE